1   Erin Rose Ronstadt, SBN 028362
    Kevin Koelbel, SBN 016599
2   OBER & PEKAS, PLLC
    3030 N. 3rd Street, Suite 1230
3   Phoenix AZ 85012
    Phone: (602) 277-1745
4   Fax: (602) 761-4443
    erin@oberpekas.com
5   kevin@oberpekas.com

6   Attorneys for Plaintiff

7              IN THE UNITED STATES DISTRICT COURT

8              FOR THE DISTRICT OF ARIZONA

9   Lorey Ann Blevins, a married woman,          No.

10                                Plaintiff,

11  v.                                           **COMPLAINT**

    UnitedHealth Group Short-Term and Long-
12  Term Disability Plan, an ERISA benefit
    plan; Standard Insurance Company, a plan
13  fiduciary; and UnitedHealth Group
    Incorporated, a plan administrator,
14                                Defendants.

15        For her claims against Defendants UnitedHealth Group Short-Term and Long-Term

16  Disability Plan (the "Plan"), an ERISA benefit plan; Standard Insurance Company

17  ("Standard"), a plan fiduciary; and UnitedHealth Group Incorporated ("UHG"), a plan

18  administrator and fiduciary (collectively "Defendants"), Plaintiff Lorey Ann Blevins ("Ms.

19  Blevins" or "Plaintiff") alleges as follows:

20              *Jurisdiction, Venue And Parties*

21        1.    This action arises under the Employee Retirement Income Security Act of

22  1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

23        2.    Ms. Blevins was a participant and beneficiary of the Plan as an employee of

24  UHG.

25        3.    UHG is the Plan Sponsor, Plan Administrator, a plan fiduciary, and employer.

26        4.    Ms. Blevins currently resides in Maricopa County, Arizona and has been a

27  resident of Maricopa County at all times since becoming a Plan participant.

28

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

5.       The Plan and UHG, have their principal place of business in the state of Minnesota.

6.       Standard has its principal place of business in the state of Oregon.

7.       Defendants Standard and UHG are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

8.       This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

9.       Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

10.      The long-term disability ("LTD") Plan is a purported ERISA benefit plan established and maintained by UHG for the benefit of its employees.

11.      Standard is a third-party claims administrator for the Plan.

12.      Standard is a Plan fiduciary.

13.      UHG and Standard have a duty to administer the Plan prudently and in the best interest of all Plan participants and beneficiaries.

14.      At the time Ms. Blevins sought LTD benefits under the Plan, Standard administered claims for UHG under the Plan, acted on behalf of the Plan, and acted as an agent of UHG and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

## GENERAL ALLEGATIONS

### *Ms. Blevins' Disability*

15.      Ms. Blevins has several medical conditions that cause significant restrictions and limitations rendering her Disabled under the Plan.

16.      Ms. Blevins' medical conditions include sarcoidosis, musculoskeletal pain, lumbar spondylosis, bilateral shoulder arthritis, cardiomyopathy, congestive heart failure ("CHF"), coronary artery disease ("CAD"), premature ventricular contractions ("PVCs"),

-2-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

1   hypertension, fibromyalgia, chronic fatigue, asthma, sleep apnea, diabetes, gastroesophageal

2   reflux disease, umbilical hernia, cognitive dysfunction, and blindness in the right eye.

3       17.    Degenerative changes were noted in diagnostic imaging of Ms. Belvins'

4   lumbar spine and bilateral shoulders.

5       18.    Ms. Blevins has undergone multiple injections for musculoskeletal pain.

6       19.    Ms. Blevins utilizes a cane to ambulate.

7       20.    Ms. Blevins' sleep apnea is evidenced in a sleep study.

8       21.    On February 3, 2015, Ms. Blevins underwent an

9   esophagogastroduodenoscopy ("EGD"), which revealed a polyp in the upper esophagus,

10  hiatal hernia, and gastric erosions.

11      22.    On February 3, 2015, Ms. Blevins underwent a colonoscopy, which revealed

12  four polyps in the colon. Biopsies revealed a focally invasive adenocarcinoma arising from a

13  tubulovillous adenoma with high-grade dysplasia.

14      23.    On February 12, 2015, Ms. Blevins underwent a sigmoidoscopy to examine

15  and mark the polypectomy site.

16      24.    On March 24, 2015, John C. Lincoln Medical Center admitted Ms. Blevins

17  for IVC thrombus.

18      25.    Ms. Blevins requires life long anticoagulation given her recurrent blood clots.

19      26.    Ms. Blevins underwent surgery for an Implantable Cardioverter-Defibrillator

20  ("ICD") on October 10, 2014.

21      27.    Ms. Blevins continued to have symptomatic PVCs after her ICD

22  implantation.

23      28.    Multiple ECGs and Holter Monitor testing revealed frequent PVCs post-ICD

24  placement.

25      29.    On February 27, 2015, Ms. Blevins underwent an ablation procedure with Dr.

26  Swarup, in which PVCs were located in the right ventricular outflow tract ("RVOT") and

27  ablated.

28      30.    Despite treatment, Ms. Blevins continues to have PVCs.

-3-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

31.     Ms. Blevins' cardiac ejection fraction ("EF") has been consistently low, indicating left ventricle dysfunction.

32.     On March 23, 2016, Ms. Blevins underwent a transthoracic echocardiogram ("TEE"), which found an ejection fraction ("EF") of 45%, apical inferior akinesis, and pulmonary hypertenison, as well as regurgitation in the aortic, mitral, and tricuspid valves, and similar to her January 27, 2015 TEE of an EF of 40-40%.

33.     Ms. Blevins continues to be highly symptomatic from a cardiac perspective. She continues to have symptoms of dyspnea (shortness of breath), palpitations, and occasional chest pain. This is evident in her medical records.

34.     Ms. Blevins has been diagnosed as a "Class III" in the New York Heart Association ("NYHA") Functional Classification, which is defined by "Marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea."

35.     Ms. Blevins utilizes compression stockings and is prescribed Lasix for bilateral lower extremity edema.

36.     There is no definitive evidence to indicate that Ms. Blevins' cardiac conditions are caused or contributed by her sarcoidosis.

37.     Ms. Blevins' cardiac conditions may be genetic – Ms. Blevins has a family history of cardiac disease.

*Plan Language*

38.     Under the terms of the Plan, during the waiting period and the first 24-month period that a participant receives benefits, a participant is Disabled if, as a result of a Medical Condition, the participant is unable to perform with reasonable continuity the Material Duties of their Own Occupation, and as a result unable to earn at least 80% of their Predisability Earnings as adjusted for inflation when working in their Own Occupation.

39.     Under the terms of the Plan, Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same

general character as the occupation that a participant is regularly performing for UHG when the participant's Disability begins.

40.     Under the terms of the Plan, Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted.

41.     Under the terms of the Plan, after receiving benefits under the Plan for 24-months, a participant is Disabled, if as a result of a Medical Condition, the participant is unable to perform with reasonable continuity the Material Duties of Any Occupation, and as a result is unable to earn at least 60% of their Predisability Earnings as adjusted for inflation.

42.     Under the terms of the Plan, Any Occupation means any occupation or employment a participant is able to perform, whether due to education, training, or experience, which is available in one or more locations in the national economy and in which the participant can be expected to earn at least 60% of their Predisability Earnings adjusted for inflation, within 12 months following their return to work, regardless of whether they are working in that or any other occupation.

43.     Under the terms of the Plan "Actively at Work" means "performing with reasonable continuity the Material Duties of your Own Occupation at your Participating Employer's usual place of business, or a location to which the Employer's business requires you to travel, or your home if that is the business location the Employer has agreed to."

44.     The term "Actively at Work" includes "regularly scheduled days off, holidays, or vacation days, so long as the person is capable of Active Work on those days."

45.     Under the terms of the Plan, a Disability may be excluded from coverage as a Preexisting Condition, unless on the date of Disability, the participant has been continuously covered under the Plan for 12 months and Actively at Work for at least one full day after the end of those twelve months.

46.     The look-back period for Preexisting Conditions is 90 days before the

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

1    effective date coverage.

2                              *Ms. Blevins' Employment*

3    47.    UHG employed Ms. Blevins as a Clinical Administrative Assistant.

4    48.    A Clinical Administrative Assistant is a sedentary occupation.

5    49.    Ms. Blevins' date of hire was February 25, 2013.

6    50.    Ms. Blevins became eligible for benefits and coverage under the Plan on

7    March 1, 2013.

8    51.    Ms. Blevins was Actively at Work until March 2, 2014.

9    52.    Ms. Blevins' first missed day of work due to her disability was March 3, 2014.

10   53.    Under the Plan, Ms. Blevins would be exempt from the pre-existing limitation

11   exclusion as of Saturday, March 1, 2014.

12   54.    Ms. Blevins sustained a full day of work on Friday, February 28, 2014, and, by

13   definition, was not Disabled on her last date of work.

14   55.    The earliest that Ms. Blevins could have been "Disabled" is the next day,

15   Saturday, March 1, 2014, a regularly scheduled day off.

16   56.    While she was not at work on Saturday, March 1, 2014, she was still

17   considered "Actively at Work" by definition.

18                              *Ms. Blevins' LTD Benefits*

19   57.    Standard first denied Ms. Blevins' benefits on May 20, 2015.

20   58.    Standard asserted two reasons for the denial: 1) Ms. Blevins' right eye

21   blindness, osteoarthritis, degenerative joint disease, sarcoidosis, atypical chest pain and

22   cardiomyopathy were excluded as Preexisting Conditions; 2) Ms. Blevins' other conditions –

23   cognitive dysfunction, chronic fatigue syndrome, fibromyalgia and colonic polyps – do not

24   support restrictions and limitations that prevent Ms. Blevins from working.

25   59.    The May 20, 2015 Denial was largely based on the opinion of Standard's in-

26   house medical director, Dr. Richard Handelsman

27   60.    In his report, Dr. Handelsman opined:

28   Yes, the claimant has the following diagnoses with reasonable limitations or

-6-

restrictions.

Atypical chest pain: *No work capacity* from the last day of work due to atypical chest pain through October 15, 2014, after which the claimant could have returned to work full time with limitations and restrictions of no lift, carry, push, or pull greater than 10 pounds and no working at extreme temperatures.

61.     Dr. Handelsman found that Ms. Blevins had no work capacity from her last day of work on February 28, 2014 through the date of her ICD implantation when she was purportedly 'asymptomatic from cardiopulmonary symptoms."

62.     Dr. Handelsman's conclusion that Ms. Blevins could return to work is undermined by the fact that he did not have Ms. Blevins' complete medical documentation, which demonstrates that she continued to have persistent symptoms requiring further evaluation, treatment, and procedures.

63.     Dr. Handelsman is a salaried employee of Standard and has been working for Standard in this capacity for over thirteen years.

64.     Dr. Handelsman has done disability reviews for three other large insurance companies, including Unum, Cigna, and Swiss Re.

65.     With his insurance defense background and working relationship with Standard, it is questionable as to whether Dr. Handelsman can truly render an impartial decision.

66.     Dr. Handelsman did not personally examine Ms. Blevins.

67.     Dr. Handelsman's findings were based only on a paper review of Ms. Blevins' claim rather than an in-person medical evaluation.

68.     Ms. Blevins appealed that denial (the "First Appeal") on October 5, 2015.

69.     Ms. Blevins disputed that her cardiac complaints were related to her sarcoidosis and, therefore, not subject to the Preexisting Condition exclusion.

70.     Standard referred the issue to Dr. Hohf, who agreed that the causal connection between her cardiomyopathy and sarcoidosis was unclear.

71.     Dr. Hohf, however, offered a new reason to deny benefits, *i.e.,* even if it was not a preexisting condition, Ms. Blevins' cardiac condition permitted sedentary work.

-7-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

72.     Dr. Hohf's new reason for denying benefits contradicts Standard's Dr. Handelsman's findings that Ms. Blevins had no work capacity on the date she claimed disability and the conclusions of her treating providers and objective medical test results.

73.     Standard conducted a biased review of her claim.

74.     As payer and decision-maker on Ms. Blevins' claim, Standard has a conflict of interest.

75.     Standard committed procedural violations depriving Ms. Blevins of a full and fair review.

76.     The procedural violations include:

➢ The look-back period for Preexisting conditions for Ms. Blevins was the 90-day period before March 1, 2013, when she became eligible for coverage – December 1, 2012 through February 28, 2013 – but Standard extended the look-back period to 180 days and reviewed medical records back through September 1, 2012.

➢ Standard considered and relied on medical reviews performed by the insurer of the short-term disability ("STD") benefits instead of conducting its own medical review.

➢ Standard's claim file notes that Standard reviewed and relied on five medical reviews from the STD claim, but Standard has not disclosed those reviews to Ms. Blevins.

➢ Standard improperly adopted and credited Dr. Handelman's findings over and to the exclusions of all other medical evidence in the record.

➢ Standard's reliance on Dr. Handelman was improper because: he does not have the requisite qualifications or experience to assess Ms. Blevins' conditions; Standard did not provide an opportunity to Ms. Blevins to respond to Dr. Handelman's findings; Dr. Handelman did not attempt to speak with Ms. Blevins' providers about her symptoms, diagnoses, or prognosis; Standard gave no consideration to Ms. Blevins' treating physicians' opinions; Dr. Handelman's findings are contrary to Ms. Blevins' treating physicians' opinions and other medical evidence; Standard offered no explanation for crediting Dr. Handelman's opinions over the clinical conclusions of her treating physicians and objective medical testing results.

77.     Standard reconsidered its denial stating:

In light of the difference of opinion between the Physician Consultant and the Associate Medical Director, as well as the uncertainty expressed by Ms. Blevins' treating physicians, it is reasonable to conclude that her cardiac complaints cannot be definitely attributed to her sarcoidosis, and should therefore not be considered a Preexisting Condition.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-8-

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

78.     As a result of the First Appeal, on January 7, 2015, Standard approved Ms. Blevins' claim under the Own Occupation definition through October 16, 2014, *i.e.,* she could not perform a sedentary job.

79.     Standard paid benefits, but only through October 16, 2014 claiming she was asymptomatic following her ICD implantation and had fully recovered (the "Second Denial").

80.     Standard argued that her other conditions are not disabling.

81.     Contrary to Standard's assertion, Ms. Blevins continued to be highly symptomatic from her cardiac conditions.

82.     After her procedure on October 10, 2014, Ms. Blevins underwent further testing, medication changes, and an ablation procedure.

83.     Ms. Blevins continues to have persistent symptoms requiring further evaluation and treatment, which was explained to Standard on the First Appeal.

84.     As part of its rationale for its Second Denial, Standard erroneously alleged that "Ms. Blevins' chart notes do not document complaints of chest pain, nor do they notate rhythm abnormality, evidence of ischemia or tachycardia" from October 17, 2014 onward.

85.     The medical evidence documents complaints of chest pain from October 17, 2014 onward:

➢ On February 5, 2015, Ms. Blevins reported chest pain during holter event monitor testing. Of significance, this was associated with sinus tachycardia and PVCs.

➢ On April 20, 2015, Ms. Blevins completed a form for Dr. Nazish Ahmad noting symptoms of chest pain.

➢ In the *Review of Symptoms* section of The Pain Center of Arizona medical records, Ms. Blevins is noted to be positive for chest pain throughout.

86.     Ms. Blevins has multiple other cardiac-related symptoms besides chest pain that are equally significant and disabling.

87.     Standard has failed to properly acknowledge these symptoms and their impact on Ms. Blevins' ability to perform work in her Own Occupation with reasonable continuity.

88.     The medical evidence also notates rhythm abnormalities, abnormalities, and/or tachycardia from October 17, 2014 onward:

➢ A ten-day external cardiac ambulatory telemetry ("ECAT") study was conducted from January 27, 2015 to February 5, 2015 revealing abnormalities, including sinus tachycardia and PVCs with associated symptoms of palpitations.

➢ On February 17, 2015, Ms. Blevins underwent a treadmill test where she walked for four minutes with heart monitoring. The results noted, "PVCs in recovery, which were RVOT in origin."

➢ During her February 27, 2015 ablation procedure, PVCs were located in the RVOT.

➢ AICD device interrogation performed on June 2, 2015 revealed three episodes of supraventricular tachycardia ("SVT"), as well as a "fluid alert," which detects elevated levels of chest congestion.

➢ AICD device interrogation performed on September 15, 2015 revealed an episode of SVT.

➢ AICD device interrogation performed on December 8, 2015 revealed two SVT episodes with the longest occurring 25 minutes. There was also another "fluid alert" on November 26, 2015.

➢ AICD device interrogation performed on March 15, 2016 revealed ventricular sinus tachycardia, SVT, and non-sustaining SVT.

➢ On March 17, 2016, Ms. Blevins underwent 24-hour holter monitor testing, which revealed 229 PVCs, 4 ventricular couplets (a.k.a. two PVCs in a row), 54 single ventricular ectopics, and 14 premature atrial contractions ("PACs").

➢ March 17, 2016 and March 23, 2016 EKGs were abnormal, noting a right bundle branch block.

89.     On June 29, 2016, Dr. Swarup concluded, "due to [Ms. Blevins'] report of dyspnea on exertion and being unable to perform vigorous exercise I do not believe she is able to sustain full-time employment."

90.     Dr. Swarup opines that Ms. Blevins' reported symptomology is "credible."

91.     Ms. Blevins' cardiac condition renders her Disabled under the Plan and prevents her from being able to work, not only in her Own Occupation, but also Any Occupation, secondary to her marked limitation of physical activity.

92.     In order to conclude that Ms. Blevins was no longer Disabled on October 17, 2014, her condition would necessarily have to have improved.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

93.     Because there is no evidence Ms. Blevins' condition has improved, denying benefits after October 16, 2014 is inconsistent with Standard's payment of benefits through October 16, 2014, illogical, arbitrary, and capricious.

94.     Ms. Blevins appealed again on June 30, 2016 (the "Second Appeal").

95.     Since October 16, 2014, Ms. Blevins continues to suffer with cardiomyopathy, congestive heart failure, and ventricular tachycardia, which are progressive conditions that do not improve. *See Estate of Blanco v. Prudential Ins. Co. of Am.*, 606 F.3d 399, 403 (7th Cir. 2010) ("Cardiomyopathy and CHF [congestive heart failure] are progressive conditions. Once they exist, they don't get better, only worse.").

96.     Ms. Blevins has not improved, and continues to exhibit the same deficits that Dr. Handelman found, including no work capacity based on her cardiac complaints leading up to her ICD implantation.

97.     Ms. Blevins has less than sedentary work capacity.

98.     Having found Ms. Blevins entitled to benefits, the burden is on Standard to justify a denial of benefits. *See, e.g. Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008) (rejecting argument that no "progression of degeneration" justifies termination of benefits because "in order to find [plaintiff] no longer disabled, one would expect the [evidence] to show an improvement.") (emphasis in original); *Robertson v. Standard Ins. Co.*, ___ F. Supp. 2d ___, No. 3:14-cv-01572-HZ, 2015 WL 5766923 *10 (D. Or. Sept. 30, 2015) ("[W]hen determining whether Defendants abused their discretion in terminating Plaintiff's benefits, the Court necessarily will consider the record as a whole including whether Plaintiff's condition improved or substantially changed between the time Defendants initially deemed her eligible for benefits and the time Defendants reversed their decision.") (emphasis added) (*quoting Torres v. Reliance Standard Ins. Co.*, No. 07-CV-202-BR, 2010 WL 276074, at *8 (D. Or. Jan. 15, 2010); *McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586, 589 (8th Cir. 2002) ("unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments.")).

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

99.     Having found Ms. Blevins met the Plan's definition of Disabled, Standard has the burden of proving that Ms. Blevins' condition has improved to the point that she no longer meets that definition.

100.    On August 2, 2016, Standard extended Ms. Blevins' benefits through the end of January 2016, claiming it lacked medical evidence to support a finding of disability beyond January 31, 2016.

101.    In large part, Standard's decision to extend benefits to January 31, 2016 was based on a file review by Dr. Mark Sims on July 21, 2016.

102.    In his report, Dr. Sims opines that, "[Ms. Blevins'] cardiomyopathy does appear to have been persistent and, in my opinion, will not improve further as she has been on appropriate medical therapy for a fairly prolonged period."

103.    Dr. Sims erroneously opines that Ms. Blevins' ventricular tachycardia had been effectively suppressed post-ablation.

104.    Dr. Sims reports that Ms. Blevins' recent cardio-pulmonary stress ("CPX") testing would be helpful as it would provide a measurement of MV02.

105.    Dr. Sims opines that if the MV02 was significantly depressed I would support a no-work capacity.

106.    Dr. Sims contacted Ms. Blevins' treating provider, Dr. Desai, without proper authorization to do so.

107.    On August 30, 2016, Ms. Blevins submitted additional medical evidence, including the recent CPX testing requested by Standard.

108.    In the August 30, 2016 letter, Ms. Blevins requested clarification as to whether Standard had issued a final determination and what her appeal rights were.

109.    Neither the August 2, 2016 nor August 11, 2016 letters from Standard identified Ms. Blevins' appeal rights under ERISA.

110.    Standard was untimely in reaching a final determination.

111.    Under ERISA, Standard had 45-days, or until August 15, 2016, to make a final determination.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

112.     On September 12, 2016, Standard acknowledged receipt of the CPX testing and reported that it would, "conduct an additional investigation to determine if additional benefits are payable."

113.     On October 11, 2016, Standard issued its final denial of benefits beyond January 31, 2016 (the "Final Denial").

114.     As part of its Final Denial, Standard conducted an addendum file review by Dr. Mark Sims whom noted that the CPX testing did not alter his prior opinion.

115.     Dr. Sims notes that the CPX report was "poorly legible" and the "actual value [of the V02/kb] was not legible."

116.     Despite the pertinent missing information from the CX report, Dr. Sims concluded that it "represents a modest reduction of cardiovascular based on functional capacity."

117.     Dr. Sims' opinion that Ms. Blevins can do sedentary work is solely based on a cardiovascular perspective.

118.     Dr. Sims' report presented new evidence.

119.     Ms. Blevins was not provided an opportunity to respond to Dr. Sims' report.

120.     Standard's Final Denial does not include any statement of Ms. Blevins' rights under ERISA. Specifically, it does not advise Ms. Blevins that she has exhausted her administrative remedies or that she had the right to file a lawsuit.

121.     Per Standard's own internal notes, the final determination should have included Ms. Blevins' rights under ERISA: "we should have the claim referred back to [the] same cardiologist for AO review and make AO decision. If AO is denied, then [Ms. Blevins] would get review language for that decision."

122.     When asked to clarify whether Ms. Blevins had exhausted the administrative procedures, Standard argued that it satisfied its duty to inform Ms. Blevins of her ERISA rights nine months earlier in its January 7, 2016 letter, conveying Standard's decision on her First Appeal, which awarded benefits through October 16, 2015.

123.     Ms. Blevins cannot perform the material duties of her Regular Occupation or

Any Occupation and therefore comes within the definition of Disability under the Plan.

124.    Ms. Blevins exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants Standard and the LTD Plan)**

125.    All other paragraphs are incorporated by reference.

126.    The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

127.    The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Blevins is no longer Disabled under the terms of the Plan.

128.    Ms. Blevins continues to be Disabled from her Own Occupation and Any Occupation.

129.    Ms. Blevins has claimed the benefits under the Plan to which she is entitled.

130.    Ms. Blevins reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan, are not subject to the Preexisting Disability exclusion, and that she would receive benefits under the Plan until she reaches her Social Security Normal Retirement Age or until he was no longer disabled.

131.    Despite the coverage of Ms. Blevins' Disability, Standard and the Plan improperly terminated her LTD benefits in breach of the LTD Plan and ERISA.

132.    Standard's and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

133.    Although the UHG Benefits Handbook states Standard has discretion with respect to claims and appeals, and to interpret the Plan, under ERISA, that can only be true if the Plan reserved that discretion to the Plan Administrator, the Plan terms provide a mechanism for the Plan Administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

134.    On information and belief, the Plan: does not reserve discretion to UHG, does not contain terms by which discretion can be delegated, and therefore, under ERISA,

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-14-

1  discretion could not be delegated to Standard.

2  135.  Even if UHG properly delegated discretionary authority to Standard, in light

3  of Standard's wholesale and flagrant procedural violations of ERISA, Ms. Blevins should be

4  entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016)

5  ("when denying a claim for benefits, a plan's failure to comply with the Department of

6  Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being

7  reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full

8  conformity with the regulation and can show that its failure to comply with the claims-

9  procedure regulation in the processing of a particular claim was inadvertent and harmless.").

10  136.  Instead of evaluating a participant's eligibility based on the applicable plan

11  language and medical evidence, Ms. Blevins is informed and believes that Standard makes

12  claims decisions based on the claims resources and financial risk it faces on certain claims.

13  137.  Standard wrongfully denied Ms. Blevins' disability benefits without providing

14  a coherent explanation for its denials, and in a way that conflicts with the plain language of

15  the Plan, violating 29 U.S.C. §§ 1109, 1132.

16  138.  Standard did not properly consider all of the available evidence when

17  terminating Ms. Blevins' benefits.

18  139.  Standard failed to conduct a full and fair review.

19  140.  Standard misstated medical evidence for its own financial benefit, *e.g.,* it

20  excessively relied on biased medical reviews provided by in-house medical consultants.

21  141.  Standard relied on findings that constitute "clearly erroneous findings of fact"

22  to deny Ms. Blevins' benefits.

23  142.  Standard abused its discretion by basing its decision on unreliable and

24  inaccurate information. When confronted with this knowledge, Standard ignored the

25  inaccuracies or created new reasons for denial.

26  143.  Upon information and belief, Standard tainted its medical file reviewers by

27  giving the reviewers inaccurate information regarding Ms. Blevins, while also failing to

28  provide its reviewers with all of the relevant evidence.

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-15-

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

144.    Upon information and belief, Standard provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

145.    Upon information and belief, Standard did nothing to insulate the appeals reviews from its initial determination and used the same claims managers throughout Ms. Blevins' administrative appeals process, or at least used employees who were managed by the same person(s) and who were orchestrating the denial according to Claim Discussion directives. *See 29* C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.").

146.    Standard routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

147.    Standard and UHG unreasonably withheld relevant documents throughout the entire claim and poorly managed the file, which is evidenced, in part, by its repeated failure to provide all relevant documents.

148.    Standard's and UHG's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrates its abuse of discretion and improper claims handling.

149.    Standard's improper claims handling is further evidenced by its inability to find Ms. Blevins' file for a period of time in November 2016 and a "recent security incident."

150.    Standard failed to properly consider the opinions of Ms. Blevins' treating and examining physicians.

151.    In terminating Ms. Blevins' LTD benefits, Standard completely disregarded evidence that Ms. Blevins' conditions had not changed or improved.

152.    Standard has no evidence that Ms. Blevins' conditions changed or improved

since it determined that she met the definition of Disabled in the Policy.

153.    Upon information and belief, Standard used in-house reviewers in evaluating Ms. Blevins' claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Blevins' benefits.

154.    The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

155.    None of Standard's reviewing physicians ever set forth any substantive reasons why Ms. Blevins' treating doctors' opinions were incorrect.

156.    Standard failed to explain why it credited the physician reviewers over Ms. Blevins' treating physicians.

157.    The peer reviewers were not given the Plan or other important records for reaching its decision that Ms. Blevins could perform work.

158.    Standard engaged in other procedural irregularities, which it did to serve its own financial best interests.

159.    On information and belief, Standard engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

160.    Standard intentionally gathered evidence to stack the deck in its favor and against Ms. Blevins.

161.    Ms. Blevins alleges upon information and belief that Standard has a parsimonious claims handling history.

162.    Standard failed to conduct a "meaningful dialogue" regarding Ms. Blevins' claim.

163.    Under the *de novo* standard of review, to be entitled to benefits Ms. Blevins need only prove by a preponderance of the evidence that she is disabled.

164.    Even under the abuse of discretion standard of review, Standard abused its discretion, because its decision terminating Ms. Blevins' disability benefits was arbitrary and capricious and caused or influenced by Standard's, its reviewing physicians, and its vendors'

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

165.   Ms. Blevins is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Standard's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Blevins' LTD claim.

166.   Under the *de novo* standard of review, Ms. Blevins is entitled to discovery regarding, among other things, the credibility of Standard's medical reviews and Standard's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the *de novo* standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

167.   Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Blevins is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

168.   Ms. Blevins is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

169.   Pursuant to 29 U.S.C. § 1132(g), Ms. Blevins is entitled to recover her attorneys' fees and costs incurred herein.

170.   Ms. Blevins is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Standard and UHG)**

171.    All other paragraphs are incorporated by reference.

172.    Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

173.    Standard is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Blevins.

174.    UHG is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Blevins.

175.    Under 29 U.S.C. § 1104(a), Standard and UHG are required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

176.    Under ERISA, which is founded in trust principles, Standard and UHG are required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

177.    In multiple ways throughout the administration of Ms. Blevins' claim, Standard and UHG breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

178.    Standard's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Standard's claims handling was discharged imprudently and caused Ms. Blevins serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

179.    To the extent that Standard's denial of benefits caused Ms. Blevins harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

180.    On information and belief, Standard instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-19-

interests.

181.    Ms. Blevins is informed and believes that Standard's employees are trained in administering claims in the best interests of Standard, not Plan participants.

182.    Standard demonstrated bias and malice against Ms. Blevins through its employees. Instead of fully and fairly reviewing the medical evidence, Standard unreasonably denied Ms. Blevins' claim based on unreliable evidence.

183.    Standard's failure to act prudently and in the best interests of Ms. Blevins is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Standard's conduct as it relates to Ms. Blevins' claim.

184.    Ms. Blevins is informed and believes that Standard has targeted claims under the Plan, including Ms. Blevins', which is a breach of fiduciary duty.

185.    On information and belief, Standard breached its fiduciary duty to Ms. Blevins by terminating her claim in an effort to avoid its financial liability.

186.    UHG breached its fiduciary duties by failing to perform the fiduciary duties imposed by ERISA, including having plan documents that meet the statutory requirement, failing to monitor Standard's claim handling, failing to insure Standard performed its duties under the Plan, and failing to take prudent or appropriate corrective action.

187.    Based on the facts of this case, Ms. Blevins has "other equitable relief" available to her in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Ms. Blevins whole for her losses from Standard's and UHG's breaching conduct.

188.    The Court has broad discretion to fashion appropriate relief to make Ms. Blevins whole and should mold the relief necessary to protect the rights of the participants.

189.    Ms. Blevins is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

190.    She is entitled to enjoin any act or practice by Standard and UHG that violate ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

191.    Standard was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Blevins' benefits for its own profit.

192.    Standard engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

193.    UHG failed to perform its fiduciary duties under ERISA and the Plan.

194.    Standard acted with malice and in bad faith against Ms. Blevins, which constitutes a violation of its fiduciary obligations.

195.    ERISA "does not elsewhere adequately remedy" the injuries caused to Ms. Blevins by Standard's and UHG's breach of fiduciary duty violations.

196.    As a direct and proximate result of the breaches of fiduciary duty, Ms. Blevins suffered actual, *significant* financial harm and has incurred financial expense.

197.    Ms. Blevins is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

198.    Pursuant to 29 U.S.C. § 1132(g), Ms. Blevins is entitled to recover her attorneys' fees and costs incurred herein.

**WHEREFORE**, on all claims, Ms. Blevins prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.    All past LTD benefits under the terms of the Plan;

B.    Clarifying and determining Ms. Blevins' rights to future benefits under the terms of the Plan;

C.    For any other benefits Ms. Blevins may be entitled to receive under the Plan due to her disability;

D.    All other equitable relief that is proper as a result of Standard's and UHG's breaches of fiduciary duties;

E.    An award of Ms. Blevins' attorneys' fees and costs incurred herein;

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-21-

F.      An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.      For such and further relief as the Court deems just, equitable, and reasonable.


Dated this 30th day of January 2017,

OBER & PEKAS, PLLC


By: *s/ Kevin Koelbel*
          Erin Rose Ronstadt
          Kevin Koelbel
          Attorneys for Plaintiff

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

-22-